David Rosen, Jr. May it please the Court, Your Honors, my name is David Rosen. I appear here today as counsel for myself and my law firm, which I'll be referring to collectively as the Rosen Defendants. There are three cases where the Rosen Defendants were named by plaintiff's counsel in the federal courts, Guibo, Lima, and Bald. I'll be referring to these three cases as the federal court cases, because the Court is aware there were also two state court cases brought against myself and my law firm as well. Those are the ones that have been argued before the Hawaii Supreme Court and submitted. Mr. Rosen, one of the things that troubles me about your appeal is, given the discussion that we just had in the earlier case, it seems to me that there are some pretty substantial issues of Hawaii consumer and nonjudicial foreclosure law that are not clearly decided one way or the other by state and federal authority. Why isn't this appeal frivolous, where the district court essentially found that you can't sanction counsel when there are serious questions to be resolved here?  Let me just say that I think I'm the only one in the room who's actually done a foreclosure, and I've done thousands. Your Honor has as well, but under California law. So there are two of you. California law is very different. California is a nonjudicial foreclosure state. Hawaii is primarily a judicial foreclosure state, but I think it's very important to assert it against the Rosen defendants. And that related to the issue of postponements. And we actually have very developed statutory and case law on that issue. Counsel, don't we face, though, the same kind of an issue here that folks on the other side, actually not, on the same side to some degree faced in the earlier case? As my colleague just mentioned, you've got, as it turns out now, at least two cases dealing with UDAP and various underlying common law potential causes of action that are being decided by the Hawaiian Supreme Court. Since at least if I understand it correctly, the Hawaiian Supreme Court didn't have to take these cases. It chose to take the cases. So doesn't that by its very nature mean that these are not laughable? These are, they are potentially going to result in something you don't like. They may or may not. But the reality is, when you're talking about Rule 11, we're basically saying these have to be utterly baseless. They've got to just be laughers. Nobody could even pay any attention to them. Clearly these aren't those kinds of cases, are they? They are, Your Honor. And I'll explain why. They are frivolous, as against me and my firm, for two reasons. One, the statute expressly provides, again, the state court cases involve some very different issues and common law and whether or not a duty was owed was argued and pled much differently in those state court cases than in the federal court cases. The federal court standard for dismissal is very different than the state court standard. As against me, though, there's an added hurdle. If you're going to sue your opponent's counsel, you have to show some nexus that either there was a relationship or that that party, that that attorney owed you some sort of duty, that they were a fiduciary, you were a third-party beneficiary, they were holding your funds. Those are the reported Hawaii Supreme Court decisions on state. But again, that's not UDAP. We're talking about the past, and I get that. We have one called Lucas v. Ham. You've got some others. And it's certainly true that under the common law, except in the estate planning area, it's extremely unusual for a lawyer who is not representing someone to be charged with negligence or whatever else. It has to be foreseeable, it has to be in estate planning. But the question, as I see it, is under UDAP, if you can be found to fit within these descriptors of the underlying transaction, can you be held? Now, there's nothing so far, but the Hawaiian Supreme Court is considering this, is it not? There are elements under UDAP. They're not even pled in these complaints. One of the primary elements of a UDAP claim is that the plaintiff needs to be a consumer of the defendant's services. Let's say you're correct, and I have no doubt you are on that point. Wouldn't the issue be whether or not the court should allow an amendment to the complaint if the Hawaii Supreme Court decides it contrary to you, then it would be sent back and the trial court would say, okay, you can amend your complaint. You know what you need to say. Go ahead. I agree. Okay. And that's what the court did. The court granted the motions to dismiss, allowed leaf to amend, and plaintiffs in all three cases declined to amend their complaints. They could have, under Iqbal and Tom Lee, they could have pled them better. They could have gone through the elements of a UDAP claim with respect to me. They didn't. It's not in their first amended complaint in Giebel and Lima. It's not in the original complaint in Bald. What about Flores versus Rawlings? What, how does that apply? That's a Fair Debt Collection Practices Act case, Your Honor. It's a very different standard. Statutorily, attorneys can be liable for UDAPs. At the federal level and at the state level and in case law. But that's a very specific category. And courts have repeatedly held that just going, just doing a nonjudicial foreclosure action is not a FDCPA type action. And it's not alleged. Again, we have to deal with what's in these complaints. But isn't the theory that borrowers are typically consumers who are financing the acquisition of their homes through the lending practices of the banks? There's no doubt that borrowers and their lenders have a consumer relationship. Right. And then on top of that, you have a contractual relationship embodied in the loan documents. Correct. Which provide certain contractual duties upon default that the lender or mortgagee must follow in order to recoup the debt or the obligation by the borrower. And the attorney is acting as the agent of the lender in discharging those duties through these nonjudicial foreclosure proceedings. So we have an element here that involves consumer transactions. We have a principal agency relationship between the lawyer and the lender in this. And the allegation is that the duties were discharged unfairly in a manner calculated to, in essence, reduce the amount of money that might have been realized if a more transparent bidding process. But Plaintiff's Counsel has conceded that there was no deficiency judgment sought in any of these cases. Other than that, there's no damages alleged. The problem, Your Honor. But the damages theory is that had this been done, I'll use my term more transparently, there might have been greater participation by potential bidders instead of only a single credit bid by the bank who held the mortgage. And that instead, let's say on a $400,000 loan, instead of a $325,000 bid, it might have been $350,000. Well, Your Honor. Isn't that the theory? Well, again, I can only look at the complaint, but I also know what actually happened. And one of Your Honors raised the question, were the borrowers, the plaintiffs given notice of postponements? And they were. I'll tell you that mail notice went out for each postponement, and that is a fact that the court can take judicial notice of because as part of the mortgagee's affidavit, which is a certificate of mailing for each postponement notice. So the borrowers were given notice every time there was a postponement. The public was also given notice. That's the public announcement. And there's another side to this, and this is critical. I think that the court really needs to understand this. If you are going to require, first of all, there's no statute or case law, and the contract itself do not require publishing postponement notices. But if you are going to do that, there's a very significant side effect, which is the cost of those postponement notices. And if you want to talk about a consumer protection issue, passing on the cost of hundreds of dollars per postponement publication to a consumer who may be trying to save their home and bring their loan current, that could very easily be viewed as a consumer violation. So we're put in this very difficult position. First of all, we follow, this is, you know, a court of law, not a court of guess. And we have to look at what the law required. And the law 667-5 says you can postpone by public announcement. The contract allows for the lender to dictate the terms of the sale, and in the notice, which is part of the contract, it allowed for postponements from time to time via public announcement. And the case law... That is probably all true, counsel, but you're still based, at least in my mind, with this problem. Even if everything you did was in accordance with typical Hawaiian practice, you nonetheless have here a Rule 11 claim. Yes. You've got a district judge over whose ruling we have to grant an abusive discretion standard. And the question for her was, is there any possibility, any possibility that this case could result in a different result? Now, I mentioned to your opposing counsel in the other case, I said, what if there were 20 postponements? And he honestly said, well, I don't know. So the reality is, you didn't have 20 postponements, but the theory is that if the facts of a given case got too bad, then you might have a problem. Now, I know you claim that you're not covered because of the definition in the statute, but if the Hawaii Supreme Court finds differently, then you've got a problem. So we're faced with the issue of, are there any circumstances under which, under UDAP, regardless of whether there is a common law claim, counsel might be held liable, then we have to uphold what the district court did. Do you agree with that? I do, Your Honor. And I don't have any problem with this court waiting for the Hawaii Supreme Court to issue its decisions. I think at the very least, it's going to provide clarity that you can't sue your opponent's counsel in this type of situation. But what Your Honor was getting to— But that specific issue is not raised, is it? It is. Yes. We raised it. All right. These cases were brought only against me. The Hawaii State court cases were brought originally only against me and my firm. Now, what about the case we just heard from Mr. Bickerton, Miki Oshii? I was not a part of that. I'm not familiar with the specific facts and briefing on that. But Your Honor, what Your Honor was talking about is, if there is anything that could have been pled, if there's any potential in the case that they could have stated a claim, that we were looking at one document, the pleading, the First Amendment complaint in Ghibo and Lima and the original complaint in Bald. And what Rule 11 says is when you sign your name on those documents, there has to be a good faith basis in those documents. It's not what could have happened. Right? And what Your Honor is getting to, if they had pled those things, then the complaints may not have been volative of Rule 11. But they didn't say any of those things. And in fact, plaintiffs acknowledge that. In Bald, they dismissed me and my firm on the eve of the motion to dismiss hearing. After not responding to our Rule 11 letter and the motion to dismiss, all of the briefing, they didn't even respond. There's a reason for this, and this is the critical thing. This is one of the critical things that I think the court needs to consider. Why? Why were myself and my firm brought into this? Judge Puglisi had no doubt. In his decision on the remand issue, he found that the joinder of myself and my firm was a frivolous joinder, that the only reason we were brought in was to attempt to defeat diversity jurisdiction. Plaintiffs don't even look at, and nowhere in their pleadings do they address their basis for suing their opponent's counsel. It's not there. Could they have amended? Maybe, but they didn't. The court gave them an opportunity, and they didn't do it. We gave them notice, and they didn't do it. So what the court should be looking at isn't what the facts might have been, but what was alleged in the complaint. And those complaints, and given the statute, given the Keiko'oha decision, which was law. When Keiko'oha came out in Hawaii, it was a big deal because it put that issue to bed, at least as far as all of the foreclosure attorneys and parties were concerned. It said that a public announcement is sufficient, and in fact, the statute says it's all that's required. So if you're going to go to the extra step, and you're going to actually publish, you better have a really good reason for doing so, so that you don't get sued for the cost that you're causing your opponents to incur. I've got a few minutes for rebuttal. I'm sorry, Counsel. Did I use it up? You exceeded your time, yes. All right. Thank you very much, Your Honor. Thank you very much. Mr. Bickerton? Thank you. I want to correct one thing that Mr. Rosen said at the beginning, and he suggested that in each case of these three, Ghibo, Lima, and Bald, that the court offered a chance to amend. In the Bald case, the court did not, and that's the one we just heard the merits argument on. The court issued the order without giving, and that's, for example, why you don't see the 28-day claim. What would you amend your complaint in Bald to say if you had leave? If we had been given leave, well, I think it would have been futile at that point because of Judge Mulway's precompton mindset, but the additional claim that's out there is the one that was recognized by Judge Kobayashi in the Sigwart case, which is also on appeal because she threw the case out on other grounds, but she recognized that this 28 days violates the statute. It's supposed to be 29 days. In the Bald case, there are two plaintiffs, Bald and Lellis. Bald was handled by a different law firm, Rushmore. They followed the law. They gave 29 days notice, and then they published the postponement. The thing that Mr. Rosen says is so expensive, we don't want to burden the poor consumer with. These other firms did it. I'm not getting an answer. I'm sorry. It's a very simple question. Yes. What additional allegations would you make if you amended your complaint? The 28 day allegation would be one, and then to the extent that I think Mr. Rosen also said, well, you didn't flesh out your complaint enough. If there's some Iqbal, in other words, I think someone was arguing there's an Iqbal versus Twombly standard, I don't think that if someone has just not put in enough detail or plausibility, they get a chance to amend to show the connection. This is your chance. So, tell me what additional facts you're going to allege to establish a colorable prima facie case against the lawyer. Oh, forgive me. I've been focusing on the whole ball of wax. As against the lawyer, I think all the facts are there already. So if we gave you leave to amend, you wouldn't have anything new to say? We would. We would put in the facts that were presented on the motion. In other words, the 68% postponement rate, which makes most of his notices false from the get go, because he knows there's a likelihood that date's never going to happen. The quit claim is a possibility. I'm not sure that we would . . . we have not alleged it against an attorney. I thought that was given up. Yeah, but that's . . . in other cases, it's a possibility, not in the bald case, Your Honor. We've given that up in these cases. Let's talk about the bald case, because I thought I read . . . No, you are correct, Your Honor. When the court pressed, I don't know if it was you or affiliated counsel, you folded and said, well, we're not really . . . I do want to address, we had never pleaded against Mr. Rosen. It's very clear from the complaint. He thought it might be in there, but it wasn't in the complaint. But I also would like to point out one reason why we dropped Mr. Rosen, since he wants to speculate and there's nothing in the record about why it was done. But you can look at all three of these cases and see that Judge Mulway, and this goes to Rule 11, twice issued inclinations to deny the motions to dismiss. What happened was in the Lima and Giba arguments, she was troubled because she didn't want Mr. Rosen to be in the case still. And she was trying to . . . if you read the transcript, she's trying to decide a way in which he can be released and the bank stays in. We pointed out it was really difficult to do that, and so she flipped from her inclination and let them both out of the case. So when bald came up a few weeks later, we said, look, it seems to be the problem that the presence of this attorney, you know, we really want to press forward with this. The argument that we don't sue the . . . we just sue the attorney to get into federal court. What about the Hungate case? We only sued Rosen initially. We later amended to add Deutsche. The Sigwart case in state court, there are two Sigwarts, one in state and one in federal. In state court, we sued Rosen alone. In federal court, we sued the bank. We filed in federal court because there was pure diversity. So we don't have any . . . On the federal Sigwart, what's the status of that case now? Hanging in this court, fully briefed. No argument date set? None set yet, as far as I know. So to get back to your question, forgive me for not focusing in on the attorney's point. We would certainly have alleged the statistics and patterns and practice that we presented to the judge factually as additional detail. There was a germ of that in the complaint because we pointed out that other lawyers don't follow his postponement practice. They publish the postponement. They read paragraph 22 the way we do, or paragraph 21 in this case, in Bald v. Bald. Those allegations are in Hungate, right? They are more fleshed out in the Hungate complaint, but not much more. The Hungate complaint only . . . I think at the time we filed the complaint in Hungate, we had not done all of the statistical analysis. Again, they were briefed to the court and they're part of the record in the Hungate case. They're in that case as well. I want to also really stress something . . . What about his allegation that that notice was given by mail to the plaintiffs of postponement? We've never contested in these cases that that wasn't done. That's not the point. Our cases focus on the publication to third parties. To potential bidders. That's what this is about. The person who is being foreclosed is pretty much likely broke. It's nice to let them know what's going on, and maybe they have a friend or a family member who can step in and bid, and maybe they can come up with a solution or find a buyer. But by and large, the money that's going to bail everyone out is coming from third-party bidders. In this case, it's worth pointing out that there were no third-party bidders in the Bald case. In the Lima case, one of the plaintiffs had a third-party bidder. In the Guibo case, one of the plaintiffs . . . the plaintiff there had a third-party bidder. It happens, but statistically, it's quite rare. It's less than 5% of the cases that there's a third-party bidder. Another thing . . . Is that true just generally, though, in Hawaii? No. Again, I can't speak to Hawaii, but in California, it's extremely rare, unless you've got a really choice piece of property, for anybody to show up but the credit bidder. Is that true in Hawaii? We presented the evidence, and it's in the record in this case, and it was . . . although people complained that it was inappropriate to put in evidence on a Rule 12, frankly, Your Honor, I've never quite figured out what this plausibility means, and I think that to show that something's plausible, I should at least be able to show some of the extrinsic facts. Okay, but you're not answering my question. But we did show . . . In Hawaii . . . We showed that in Hawaii, in judicial foreclosures . . . No, not judicial, non-judicial foreclosures. What's the practice here? Do people show up or not, other than the credit bidder? There are . . . bidders do show up, and I don't know . . . We do not know at what percentage. We know at what percentage they end up bidding successfully, and that is ranging between 4 and 5 percent, depending on which . . . I realize we're talking pleadings here, which is very different than the questions I'm asking, but I'm trying to understand the Hawaii regime, so I can understand the fairness, et cetera. And I guess what I'm concerned about is, is there any practical difference in one, two postponements if the only person that's there is the credit bidder, versus if there's no postponement and you still have the same credit bidder? I think it does make a difference, because the . . . first of all, economic conditions change over time. Some of these postponements are many months. A postponement can happen . . . your first auction might be on a day when six other properties are being auctioned that day. So even if there are 10 or 12 interested people, they may be focused on something else. A postponement could be a day when there's no one else competing. But it works both ways, right? It can. So, for example, if you postpone it and it turns out it's a beautiful, sunny day and the property shows really well, you might have 20 people there where you might not have anybody on the first one. You're more likely to get those 20 if you put it in the newspaper, and that's our case. Isn't it the case, though, that most people who bid on these properties, they know each other. It's a community. That's what they do. They buy them in bulk, basically, and it really doesn't matter whether it's published in the newspaper or not. They find out initially, but everybody knows. Anybody has any interest, they've checked out the properties, they show up and they either bid or they don't bid, but it's the same people. Is that correct? Well, I think there's a chicken and egg problem. Is that system, which I acknowledge is very common, is that system the result of these very opaque and insidery-type practices of not publishing and of only announcing it to the people who show it the first time? Again, we're both kind of speculating, I suppose, but to me, I practiced real estate law for 37 years, and what I saw was what I just described. I would be very surprised if it were any different in Hawaii, and I'm asking you whether it is different. I think that it's safe to say that the majority of third-party purchasers are people who are in the business of doing that, a random person looking for a home. But we have actually presented the statistics on these buyers and given their names, and there is some variation. There will be two or three companies that might repeat, but then there are individuals who just buy once, and so it's hard to say until we get to do discovery the precise answer to your question. I think it's a mix here. Okay. Thank you. Land is extremely sought after in Hawaii. In California, I'm sure there's lots of wide-open space and farmland that may go begging, but because we're on an island— A lot more now than there used to be. Yeah. Because we're on an island, there is a very high demand for the land, and the auctions that I've seen are generally attended by someone. At the peak of this foreclosure wave, I think it was tough. There weren't enough buyers to go around, but certainly judicial foreclosures, we see that all the time, and then they often show up at the confirmation hearing, and they bid outside the courtroom as well and drive the price up further. One or two things I wanted to touch on before I run out of time. Mr. Rosen continually refers to the opponent's lawyer or the opposing lawyer. We had this discussion in the Supreme Court back in June, and that is you have to step back and ask yourself, are they really my adversary? Doesn't an adversary require a referee and a system of rules to really have an adversary? If you're shooting fish in a barrel, the fish aren't your adversaries. They're not happy, and they're reacting negatively, but it isn't a fair fight. It's not an adversary. You would agree that if the foreclosure proceeded judicially, it's still an identical foreclosure proceeding in the sense that the ultimate aim of which is to sell the property to the highest bidder and hopefully recover as much of the lender's loss as possible. There is a judge there to make sure. We cite the Wood River case in our briefs, and it's a very important case because it explains what the conflict is in a non-judicial and why it's different from judicial. Maybe you can educate me because it seems to me that aside from the fact that you do have a referee, the whole point of the exercise is to sell the property hopefully for as much money as you can get. Where there is not a lot of bidders out there and the bank calculates that it can get more for this property if it's able to retail it subsequent to the auction. It has an incentive to drive away other buyers at the auction. But it also has an incentive, does it not, to eschew the judicial process because the non-judicial process is quicker, cheaper, and more efficient theoretically? Yes, but that comes with the price that they're not willing to pay in this case, which is that the consumer law would provide some protections to the borrower if they cut those corners. But that conflict where the banks, what they do is they bid a low credit bid, and then they turn around and sell it six months later through a realtor advertising a limited warranty deed with showings, and they get $50,000 or $60,000 or $70,000 more. Why couldn't they do the same thing after a judicial foreclosure proceeding if they were the successful bidder? If they were the successful bidder, but there's a judge there who has no interest in that real interest in getting the highest price. But if there are no competing bidders, they can bid the same credit bid amount that they would bid in a non-judicial. That is true, but there is a judge, and with respect, there is a judge there who is trying to make sure there are competing bidders. And the fact that that judge is going to warrant the title, in effect, through his final judgment is the assurance to people that someone isn't going to come in and challenge. You've got cases in front of you, and the district court has dozens of them, where people have refused to vacate and challenged the foreclosures having been done improperly. Buyers would much prefer to go to a judicial auction and say, I want the judges imprimatur, I know I'm not going to have to deal with this disgruntled mortgagor, than go to a judicial sale where there's no warranty at all, and where there's very, every likelihood you're going to face litigation with that mortgagor after you get the bond. Isn't that one of the reasons why a quitclaim deed might be the only deed offered? Because there could be potential detainer problems? We're not suggesting that the problems that predate, or even the season argument that they make, that's another red herring. What our allegation is, is that if you are selling someone else's property, you should warrant at least that you did it correctly and did not violate the law. You have to warrant that so that the people know that it was done correctly. That's what the judicial foreclosure, in effect, gives a bidder. But I thought the purpose of the deed was more to protect both the seller and the purchaser from subsequent claims by third parties who might allege a competing interest in the property. It's to protect the bidder, certainly. The warranty deed protects the bidder because a bank stands behind it and says, we did this sale correctly. We promise you that we followed the statute. Is it that, or we're providing you with lawful ownership of the property and you're not buying a lawsuit against another party that may come in and say that they have a competing claim? Well, I think that the bank could give such a warranty deed because when it was mortgaged, they did a title search. They had title insurance for that mortgage, and a subsequently existing junior lien is not going to defeat their mortgage. They don't do that. But I assume that the Hawaii Supreme Court will tell us whether or not this practice of offering only a quitclaim deed versus a warranty deed is required under Hawaii law. Well, they probably will not in Hungate because the lower court found that we stated a claim and therefore it never went up. You're the only court currently, I think, appellate court considering that particular question. And we submit that there is a, certainly out of 12b-6, there is a basis to say that given the comparison between how often third-party bidders bid at judicial versus non-judicial, that this use of the quitclaim deed where the bank is refusing to even tell the public that they've done the foreclosure correctly, you're selling someone else's property and you're not standing behind your work. Thank you, counsel. Your time has expired. Oh, question? Just one quick question. Is there any evidence in the record that a bank brought a deficiency claim against someone whose property was sold for less than fair market value from your perspective? There is not in this record. But I think there may be, and I'd have to look at all three of these cases to know, there are second mortgages in some cases. They're wiped out. Are they not when they are foreclosed? The mortgage may be wiped out, but the debt is not. Well, but we are not a... And so far as the third party is concerned, it's gone off the property, right? The person who buys the property doesn't have to worry about that second mortgage, but the debtor's debt, the mortgagor's debt to that, this is not like California where we have non-recourse financing. It's all recourse here. So you still owe that debt to the second... But there's no evidence in the record about that? I can't think of record in this case. The Gibbs case, there is an issue, and that's a published case where there's a second mortgage. Thank you. Kelsey, before submitting this case, you mentioned a case which I believe you said was the Wood River case. Wood River, yes. I'm looking at your brief, and I can't find it. What... You may have a different... I believe so many of you are, I'm not sure if you agree with me or not, but it's not a controversial proposition. Well, that's fine, except that if you want us to look at the case, you better give us the site, and so far we don't have any site. Your Honor, I will be very... We're at the fortune of very few people who can find the site. You may do so, and please do so, and serve a copy on your opposing counsel. All right, the case just argued will be submitted for decision, and the court will take a 10-minute recess.
judges: O'scannlain, Tallman, Smith